## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JONATHAN J. LIND,
                Appellant,

      v.

DEPARTMENT OF THE INTERIOR,
                Agency.

DOCKET NUMBER
DE-1221-19-0312-W-2

DATE: August 8, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Raven Lind</u>, Pine, Colorado, for the appellant.

<u>Chen Song</u>, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Heny J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication
of this appeal.

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied the appellant corrective action in his individual right of action (IRA) appeal because he failed to establish that his protected disclosures were a contributing factor in a covered personnel action. Generally, we grant petitions

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that all of the appellant's disclosures were protected and that his detail to another position was a covered personnel action, to update the contributing factor analysis accordingly, and to include an analysis as to whether the agency established by clear and convincing evidence that it would have taken the action absent whistleblowing, we AFFIRM the initial decision.

## BACKGROUND

On December 15, 2013, the appellant began his employment as an Information Technology (IT) Specialist with the agency.[2] *Lind v. Department of the Interior*, MSPB Docket No. DE-1221-19-0312-W-1, Initial Appeal File (W-1 IAF), Tab 10 at 122. As part of his duties, the appellant was the WebTA system administrator and was responsible for ensuring that the system was performing successfully.[3] Hearing Recording (HR) (testimony of appellant). According to the appellant, in April 2016, while troubleshooting some performance issues, he discovered that the office was not in compliance with the minimum database

---

[2] The appellant is currently on disability retirement and no longer works for the agency. Hearing Recording (testimony of appellant).

[3] WebTA is a web-based time and attendance system used by some Federal agencies.

requirements, which was causing significant performance issues with WebTA. W-1 IAF, Tab 15 at 43; HR (testimony of appellant). The appellant alerted his first-line supervisor, NM, that the office was not meeting the minimum database requirements, but according to the appellant, NM did not address the issue. W-1 IAF, Tab 15 at 43-44; HR (testimony of appellant). The appellant further explained that in June 2016 during a meeting with NM and the appellant's second-line supervisor, TL, NM told TL that the office was meeting the minimum database requirements, which prompted the appellant to contradict NM and inform TL that the office was not, in fact, meeting those requirements. W-1 IAF, Tab 15 at 44-45; HR (testimony of appellant). According to the appellant, NM then claimed that the hardware did not exist to meet the minimum database requirements, and the appellant again contradicted him and informed TL that the hardware did exist. W-1 IAF, Tab 15 at 44-45; HR (testimony of appellant). At the end of this meeting, TL ordered NM to meet the minimum database requirements. W-1 IAF, Tab 15 at 45; HR (testimony of appellant, testimony of TL).

Based on NM's behavior, the appellant believed that NM was attempting to undermine the effectiveness of WebTA, a belief that was further supported when the appellant allegedly overheard NM say that he was going to make the server so expensive that "nobody will want to pay for it." W-1 IAF, Tab 15 at 47; HR (testimony of appellant). Therefore, the appellant thought NM was sabotaging WebTA when he purchased an excessively large server that would waste hundreds of thousands of dollars in additional licensing, annual maintenance, and other expenses. W-1 IAF, Tab 15 at 48; HR (testimony of appellant).

In February 2017, the appellant met with TL and TL's Deputy, CT, to voice his concerns about NM sabotaging WebTA by purchasing an excessively large server. W-1 IAF, Tab 1 at 16; HR (testimony of appellant). In response, TL dismissed the appellant's concerns, telling the appellant that sometimes he may not agree with his boss's decision. W-1 IAF, Tab 15 at 47; HR (testimony of

appellant).  Months later, in October 2017, NM issued the appellant his performance evaluation in which NM rated the appellant lower in one critical element, thus lowering the appellant's summary rating from exceptional to superior.  W-1 IAF, Tab 15 at 8, Tab 17 at 59.

Concerned about his performance evaluation, on December 1, 2017, the appellant spoke to CT and explained that he believed that his evaluation was lowered by NM in retaliation for his February 2017 disclosure.  W-1 IAF, Tab 1 at 16; HR (testimony of appellant).  During this conversation, the appellant also disclosed that NM had sent him the interview questions ahead of his interview for the IT Specialist position.  W-1 IAF, Tab 1 at 16, Tab 15 at 64; HR (testimony of appellant).  TL was informed of the appellant's allegations, and on February 2, 2018, TL officially notified the appellant that he would be detailed to the Time and Attendance Branch, under a different supervisor; however, according to the appellant, his duties largely remained the same.  W-1 IAF, Tab 15 at 101; HR (testimony of appellant).  This detail coincided with an administrative investigation of NM, which ultimately found that NM had committed a prohibited personnel practice by sending the appellant the interview questions prior to his interview.  W-1 IAF, Tab 15 at 29-30.  As a result, the agency removed NM from his position effective July 24, 2018.  W-1 IAF, Tab 13 at 57.

At the end of his detail, the appellant was placed under the supervision of a new first-line supervisor, MR, and a new second-line supervisor, CK.[4]  HR (testimony of MR, testimony of CK).  On August 1, 2018, the appellant spoke to TL and informed him that he feared retaliation from his new supervisors, while also disclosing that his previous concerns regarding the server had not yet been addressed.  W-1 IAF, Tab 1 at 17.  Under the supervision of MR and CK, the appellant asserts that he suffered continued retaliation, specifically when MR

---

[4] Although the official notification states the detail would last 30 days, TL did not end the appellant's detail until July 30, 2017, after the completion of the investigation of NM and NM's subsequent removal.  *Lind v. Department of the Interior*, DE-1221-19-0312-W-2, Appeal File, Tab 7 at 127.

failed to select him as acting team lead, when MR and CK denied him a third day of telework, and when MR moved him to a different cubicle. *Id.*; HR (testimony of appellant).

The appellant filed a complaint with the Office of Special Counsel (OSC) alleging whistleblower retaliation. W-1 IAF, Tab 1 at 7-22. OSC subsequently closed the appellant's complaint and issued him a letter advising him of his right to appeal to the Board. *Id.* at 7-8. The appellant filed an IRA appeal with the Board and requested a hearing. *Id.* at 2. After finding jurisdiction and holding a hearing, the administrative judge issued an initial decision finding that the appellant was not entitled to corrective action. *Lind v. Department of the Interior*, DE-1221-19-0312-W-2, Appeal File (W-2 AF), Tab 32, Initial Decision (ID).

Specifically, the administrative judge found that the appellant only proved that the December 2017 disclosure was protected, i.e., the statements that disclosed that NM had provided him with the interview questions in advance of the interview. ID at 8. As for the February 2017 and August 2018 disclosures, which disclosed issues with the WebTA server and a fear of retaliation by new supervisors CK and MR, the administrative judge found that the appellant failed to establish that he had a reasonable belief that these disclosures evidenced any of the types of wrongdoing covered by 5 U.S.C. § 2302(b)(8).[5] ID at 4-8. Next, the

---

[5] During the hearing, the appellant testified that he believed NM turned against him because he contradicted NM in front of TL during the June 2016 meeting. HR (testimony of appellant). To the extent that the appellant alleges that the statements made during the June 2016 meeting were a protected disclosure, he did not raise this disclosure in his OSC complaint, and thus, the Board has no authority to consider it. *Boechler v. Department of Interior*, 109 M.S.P.R. 638, ¶ 6 (2008) (affirming that the Board may only consider claims of whistleblowing that the appellant raised before OSC), *aff'd*, 328 F. App'x 660 (Fed. Cir. 2009); W-1 IAF, Tab 1 at 9-22. Furthermore, in a prehearing ruling finding Board jurisdiction over the appeal, the administrative judge did not include the statements made during the June 2016 meeting as a protected disclosure at issue in this appeal. W-1 IAF, Tab 26 at 6-8. The administrative judge invited any objections or corrections to his jurisdictional ruling to be made within 7 days of the order. *Id.* at 8. The appellant did not make any objections to the administrative judge's ruling. Thus, we discern no basis to disturb the administrative

administrative judge found that the lowered 2017 performance evaluation and the denial of a third day of telework were covered personnel actions. ID at 9-12. However, he also found that the appellant's detail, nonselection for acting team lead, and a cubicle change were not covered personnel actions under 5 U.S.C. § 2302(a)(2)(A).[6] *Id.*

Finally, the administrative judge found that the appellant failed to show that the one disclosure he did find to be protected, the December 2017 disclosure about the interview questions, was a contributing factor to either the lowered performance appraisal or the denial of a third day of telework. *Id.* Accordingly, because the appellant failed to establish that his protected disclosure was a contributing factor in a covered personnel action, the administrative judge determined that the appellant failed to establish that he was entitled to corrective action. ID at 13.

The appellant timely filed a petition for review. Petition for Review (PFR) File, Tab 1. In support of his petition, the appellant argues that the administrative judge "failed to consider all evidence" and that there was "inconsistent/incorrect documentation from agency and MSPB" and claims that, due to the pandemic, he

---

judge's finding. *See Brown v. Department of the Army*, 96 M.S.P.R. 232, ¶ 6 (2004) (rejecting an agency's argument on review that the administrative judge mischaracterized the agency's charge because the agency failed to preserve an objection when it did not object to the administrative judge's prehearing order).

[6] The appellant alleged two other personnel actions in his OSC complaint, the denial of a transfer, and a reassignment to a new, more onerous project. W-1 IAF, Tab 1 at 17. These matters were not listed in OSC's summary of the personnel actions raised by the appellant. *Id.* at 8. In a prehearing ruling finding Board jurisdiction over the appeal, the administrative judge did not include these matters in the list of personnel actions at issue. W-1 IAF, Tab 26 at 6-8. The administrative judge invited any objections or corrections to his jurisdictional ruling to be made within 7 days of the order. *Id.* at 8. The appellant did not make any objections to the administrative judge's ruling. Thus, we discern no basis to disturb the administrative judge's finding. *See Brown*, 96 M.S.P.R. 232, ¶ 6 (rejecting an agency's argument on review that the administrative judge mischaracterized the agency's charge because the agency failed to preserve an objection when it did not object to the administrative judge's prehearing order).

was unable to "contact/utilize defense witnesses" and was denied an in-person hearing. *Id*. at 4. The agency did not respond to the appellant's petition.

## DISCUSSION OF ARGUMENTS ON REVIEW

We have considered the appellant's arguments on review and find that they do not show error in the initial decision or the administrative judge's processing of the appeal. While the appellant asserts that the administrative judge did not consider all of the evidence and that there was "inconsistent/incorrect documentation," he provides no details to support his claim. Thus, we find no basis to disturb the initial decision in this regard. *See Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980), *review denied*, 669 F.2d 613 (9th Cir. 1982) (per curiam) (finding that, before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect and identify the specific evidence in the record which demonstrates the error); *Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984) (finding that an administrative judge's failure to mention all of the evidence of record does not mean that he did not consider it in reaching his decision), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Regarding the appellant's claim that he was unable to contact witnesses because of the pandemic, he again provides no specifics in support of his claim. Finally, regarding his claim that he was denied an in-person hearing, the Board has held that an administrative judge may hold a video hearing, regardless of whether the appellant objects. *Koehler v. Department of the Air Force*, 99 M.S.P.R. 82, ¶¶ 10, 13 (2005). Thus, in sum, the appellant's arguments on review do not show error in the initial decision; however, based on our review of the record, we discern a number of errors in the initial decision that are discussed below.

Federal agencies are prohibited from taking, failing to take, or threatening to take or fail to take any personnel action against an employee in a covered

position because of the disclosure of information that the employee reasonably believes to be evidence of a violation of law, rule, or regulation, gross management, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety. 5 U.S.C. § 2302(b)(8). The appellant is required to establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 12 (2015). To establish that he made a protected disclosure, the appellant must demonstrate by preponderant evidence that he disclosed information that he reasonably believed evidenced a situation covered by 5 U.S.C. § 2302(b)(8)(A). *Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶ 13 (2013). If the appellant makes out a prima facie case of whistleblower retaliation, then the agency is given the opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Mastrullo*, 123 M.S.P.R. 110, ¶ 12.

The administrative judge erred in finding that the appellant did not have a reasonable belief that he disclosed one of the types of wrongdoing set forth in 5 U.S.C. § 2302(b)(8) in February 2017 and August 2018.

In the initial decision, the administrative judge determined that the appellant failed to prove that he made a protected disclosure in February 2017 when he disclosed his concerns about the server. ID at 5-7. The administrative judge reasoned that the appellant did not hold a reasonable belief that his February 2017 disclosure evidenced one of the types of misconduct described by 5 U.S.C. § 2302(b)(8) because the appellant's allegations were "factually inaccurate." *Id.* Applying the same reasoning, the administrative judge found that the appellant's August 2018 disclosure was similarly not protected, as it was a reiteration of the February 2017 disclosure. ID at 8.

The administrative judge erred in his interpretation of the reasonable belief standard. Whether an employee has a reasonable belief is determined by an objective test – whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the matters disclosed show one of the categories of wrongdoing set out in the statute. *Mithen*, 119 M.S.P.R. 215, ¶ 13. The appellant need not prove that the matter disclosed actually established one of the situations detailed under 5 U.S.C. § 2302(b)(8)(A)(ii); rather, the appellant must show that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8)(A). *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 19 (2010).

We believe the record establishes that the appellant held a reasonable belief that his February 2017 and August 2018 disclosures regarding the server evidenced gross mismanagement and/or gross waste of funds.[7] First, NM was not forthright with TL regarding whether the office was meeting the minimum database requirements. W-1 IAF, Tab 15 at 44-45; HR (testimony of appellant, testimony of TL). Additionally, the appellant overheard NM say that he was going to make the server "so . . . expensive that nobody will want to pay for it." W-1 IAF, Tab 15 at 47; HR (testimony of appellant). This is corroborated by another employee, who confirmed that NM told him "that if it was the last thing [NM] did, he was going to get [W]ebTA removed from the product line offered by [the office]." W-1 IAF, Tab 15 at 96. Based on NM's behavior, the appellant believed that NM was actively undermining WebTA by selecting a server that was twice as large as necessary with the intention of costing the agency hundreds of

---

[7] Gross mismanagement means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Embree v. Department of the Treasury*, 70 M.S.P.R. 79, 85 (1996). Also, an employee discloses a gross waste of funds when he alleges that a more than debatable expenditure is significantly out of proportion to the benefit reasonably expected to accrue to the government. *Id.*

thousands of dollars in additional licensing, annual maintenance, and other costs. HR (testimony of appellant).

In light of these circumstances, we believe a disinterested observer with knowledge of the facts known to and readily ascertainable by the appellant could reasonably conclude that his disclosures regarding the server evidenced a gross waste of funds and/or gross mismanagement. Therefore, we find that the appellant's February 2017 disclosure is protected, and to the extent that the August 2018 disclosure was an iteration of the same matter, it is similarly protected.[8] *See Schneider v. Department of Homeland Security*, 98 M.S.P.R. 377, ¶ 15 (2005) (stating that an appellant's protected disclosures remains protected at each iteration).

The administrative judge erred in determining that the appellant's detail was not a covered personnel action.

The administrative judge found that the appellant's detail was not a covered personnel action "because it was not adverse to the appellant." ID at 10. However, 5 U.S.C. § 2302 does not require that a personnel action be "adverse" to an appellant to be covered. 5 U.S.C. § 2302(a)(2)(A), 2302(b)(8). Indeed, a detail is explicitly listed as a covered personnel action in the statute. 5 U.S.C. § 2302(a)(2)(A)(iv). Accordingly, whether the appellant considered the detail to be adverse is not relevant to the determination as to whether it was a covered

---

[8] The appellant also alleged that his statement that he feared retaliation by his new supervisors, CK and MR, was protected. W-1 IAF, Tab 1 at 17; HR (testimony of appellant). Disclosures must be specific and detailed, not vague allegations of wrongdoing. *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016). Conclusory, vague, or unsupported allegations are insufficient to qualify as disclosures. *McDonnell v. Department of Agriculture*, 108 M.S.P.R. 443, ¶ 7 (2008). We find that a generalized "fear" of retaliation without any explanation as to the basis for such fear is insufficiently specific or detailed to constitute a disclosure. Furthermore, we note that there is no evidence that MR or CK had any awareness of the appellant's disclosures as of August 1, 2018, when he made that claim – thus, the appellant's "fear" of retaliation was wholly unsupported. Thus, we agree with the administrative judge's decision that the appellant's disclosure regarding his fear of retaliation is not protected. ID at 8.

personnel action. Thus, the administrative judge was incorrect in finding that the appellant's 2018 detail was not a covered personnel action. ID at 10.

However, we agree with the administrative judge that the agency's failure to select the appellant for the acting team lead role and the cubicle change are not covered personnel actions under 5 U.S.C. § 2302. ID at 10-13. Neither of these actions are expressly named in 5 U.S.C. § 2302(a)(2)(A), and under the circumstances present here, we do not find that these acts fall into the statute's catchall provision, as neither qualifies as a "significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The acting team lead position was nothing more than a temporary role involving minor changes in responsibilities for a limited timeframe while MR was on leave.[9] HR (testimony of MR). As for the cubicle change, the appellant was moved to a cubicle with windows in the same area and was promptly returned to his windowless cubicle on his request. HR (testimony of appellant, testimony of MR). We do not believe this short-lived cubicle change constitutes a "significant change" in the appellant's working conditions pursuant to 5 U.S.C. § 2302(a)(2)(A)(xii). Accordingly, we agree with the administrative judge that neither of these personnel actions are covered under 5 U.S.C. § 2302. ID at 10-13.

The appellant met his burden of showing that a protected disclosure was a contributing factor to a covered personnel action.

To prevail on the merits of an IRA appeal, an appellant must meet his initial burden of establishing by preponderance of the evidence that his whistleblowing activity was a contributing factor in the personnel actions in dispute. *Mithen*, 119 M.S.P.R. 215, ¶ 11. One way for an appellant to meet the contributing factor standard is by satisfying the knowledge/timing test, *i.e.*, by demonstrating that the official taking the personnel action knew of the disclosure and the personnel action occurred within a period of time such that a reasonable

---

[9] Nothing in the record suggests that the assignment to the acting team lead position would have constituted a detail or a promotion.

person could conclude that the disclosure was a contributing factor in personnel action.[10] *Id.*; 5 U.S.C. § 1221(e)(1). We limit our contributing factor review to the three remaining personnel actions at issue, *i.e.*, the lowered 2017 performance appraisal, the February 2018 detail, and the denial of a third day of telework, and the three protected disclosures.

> *The appellant's protected disclosures were a contributing factor in the February 2018 detail.*

First, we find that the appellant established that his protected disclosures were a contributing factor in the February 2018 detail. TL admitted to being aware of the appellant's December 2017 statements that disclosed that NM sent the interview questions prior to his scheduled interview. HR (testimony of TL). Two months after the December 2017 disclosure, TL detailed the appellant to a different branch. W-1 IAF, Tab 15 at 101. Accordingly, using the knowledge/timing test, the appellant established that his protected disclosure was a contributing factor in the agency's decision to detail him.

> *The appellant failed to prove through the knowledge/timing test that his protected disclosures were a contributing factor in his 2017 lowered performance appraisal.*

Next, looking at the appellant's 2017 lowered performance evaluation, we find that the appellant failed to establish by preponderant evidence that NM had knowledge of the appellant's February 2017 disclosure regarding the server.[11] The only evidence in the record as to whether NM had knowledge of the

---

[10] In the initial decision, the administrative judge consistently cites to the legitimacy of the agency's reasoning for a personnel action as a basis for finding that the appellant failed to meet the contributing factor standard. ID at 10-13. However, if the appellant establishes the knowledge/timing test, he establishes that the protected disclosure was a contributing factor in the personnel action, regardless of the reasonableness of the agency's actions. 5 U.S.C. § 1221(e)(1). The legitimacy of the agency's action is, however, part of the agency's burden to prove by clear and convincing evidence that it would have taken the personnel action absent the appellant's protected disclosure. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) (stating that the strength of the agency's evidence in support of its personnel action is a factor to be considered as part of the agency's burden of proving by clear and convincing evidence that it would have taken the same action absent whistleblowing).

appellant's protected disclosure is the appellant's testimony, in which the appellant claims that in May 2017, NM told him that he did not appreciate the appellant "circumventing" him on WebTA. HR (testimony of appellant). Notably, there is no mention of this "circumventing" statement in either the appellant's signed or unsigned statements submitted during the administrative investigation of NM. W-1 IAF, Tab 15 at 34-54, 68-75. Nevertheless, the appellant's testimony about this statement is vague and it is unclear whether he believes that NM was referring specifically to the February 2017 disclosure or more generally to the appellant's concerns regarding WebTA. HR (testimony of appellant). NM was aware that the appellant had issues with WebTA, as NM was present on at least one occasion when the appellant raised such concerns with TL. *Id.* However, establishing that NM had some general knowledge that the appellant had discussed concerns with TL will not satisfy the knowledge/timing test; the appellant must show that NM had knowledge of the appellant's specific protected disclosures. *See Mithen*, 119 M.S.P.R. 215, ¶ 11 (stating that the appellant must prove by preponderant evidence that he made a protected disclosure and that such whistleblowing activity was a contributing factor in a personnel action); W-1 IAF, Tab 1 at 16-17. Here, there is no evidence that the appellant informed NM of his February 2017 disclosure, and there is no evidence that TL informed NM of the appellant's disclosure.[12] HR (testimony of appellant, testimony of TL).

---

[11] The other two protected disclosures made by the appellant occurred after the performance evaluation was issued in October 2017, and thus, it would have been temporally impossible for NM to have known of these disclosures. *Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 8 (2015) (stating that a disclosure that occurs after the personnel action at issue was taken cannot be considered a contributing factor in that personnel action).

[12] CT did not testify during the hearing, and neither party requested CT as a witness. W-2 AF, Tab 2 at 9-10. Thus, the record contains no testimony from CT as to whether she informed NM of the disclosure. NM passed away prior to the hearing, and thus, we do not have his testimony on the issue. W-1 IAF, Tab 12 at 81.

Ultimately, the appellant has the burden of proof to establish, by preponderant evidence, that the whistleblowing activity was a contributing factor in an agency personnel action. *Mithen*, 119 M.S.P.R. 215, ¶ 11. The only evidence that indicates that NM may have had knowledge of the February 2017 disclosure is a singular ambiguous statement alleged for the first time by the appellant at the hearing without any corroborating evidence in the record. Given the circumstances, we find that this statement is too nebulous and ambiguous on its own to confirm that NM had knowledge of the appellant's February 2017 disclosure. Accordingly, we find that the appellant failed to establish contributing factor through the knowledge/timing test as it relates to the 2017 performance evaluation.

> *The appellant failed to prove through the knowledge/timing test that his protected disclosures were a contributing factor in the decision to deny him a third day of telework.*

Turning to the denial of the third day of telework, we find that the appellant failed to establish through the knowledge/timing test that his protected disclosures were a contributing factor in the denial. We note that in the initial decision the administrative judge found that the appellant failed to establish that MR or CK had knowledge of his disclosures, relying on the appellant's testimony that he did not have any evidence that MR or CK were aware of his disclosures. ID at 12. However, the record contains a personal memorandum written by MR, dated August 16, 2018, stating that the appellant disclosed "that it was him to get [NM] fired . . . and that [the appellant] started the investigation about the extra $850,000 dollar server purchased." W-1 IAF, Tab 12 at 46. Thus, we find that MR did have knowledge of the appellant's disclosures as of August 16, 2018. Nonetheless, we find that the appellant failed to establish contributing factor through the knowledge/timing test, as MR denied the appellant's request for an additional day of telework on August 13, 2018, several days before the appellant told MR about his protected disclosures. *Cf. Sherman v. Department of*

*Homeland Security*, 122 M.S.P.R. 644, ¶ 8 (2015) (stating that a disclosure that occurs after the personnel action at issue was taken cannot be considered a contributing factor in that personnel action); W-1 IAF, Tab 13 at 13-14.

<u>The appellant failed to provide any other evidence to establish that his whistleblowing activity was a contributing factor in the personnel actions at issue.</u>

The Board has held that, if an administrative judge determines that an appellant has failed to satisfy the knowledge/timing test, he shall consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the official taking the action, or whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012). Considering these other factors, we do not find that the appellant established that his protected disclosures were a contributing factor in either the lowered 2017 performance rating or the denial of the additional day of telework.

> *The appellant failed to present any evidence that his whistleblower activity was a contributing factor in his lowered performance evaluation.*

The record does not establish that the appellant's February 2017 disclosure regarding the WebTA computer server was a contributing factor in NM's decision to lower the appellant's rating from exceptional to superior. Looking at the strength of the agency's reasons for the superior rating, the record is sparse, as NM passed away prior to the hearing, and thus, there is no testimony from him regarding the issue. W-1 IAF, Tab 12 at 81. Therefore, the only information we have regarding the reasons that NM decided to rate the appellant as superior is the appraisal itself, which details the basis for the appellant's summary rating. W-1 IAF, Tab 15 at 8-23. The appellant has presented little evidence that undermines this reasoning, alleging only that his contributions warranted an exceptional rating and that NM "copied and pasted" information from the

appellant's self-evaluation. *Id.* at 52, 73; HR (testimony of appellant). Ultimately, it is the burden of the appellant to establish that his protected disclosure was a contributing factor to the personnel action, and we do not find that the appellant has presented any evidence that would lead us to second-guess NM's decision to rate the appellant as superior. *Mithen*, 119 M.S.P.R. 215, ¶ 11.

Next, while we acknowledge that the appellant's February 2017 disclosure regarding the WebTA computer server directly involved NM, we also believe that in order for NM to be motivated to retaliate, he must have knowledge of the protected disclosure. In other words, in order for an official to have a motive or desire to retaliate against an employee because he made a protected disclosure, we believe it necessary first for the official to have knowledge of that employee's protected disclosure. *See Dorney*, 117 M.S.P.R. 480, ¶ 14 (stating that a disclosure is a contributing factor if it affects an agency's decision to threaten, propose, take, or fail to take a personnel action). We do not find that NM had knowledge of the appellant's February 2017 disclosure; thus, we find it unlikely that NM had a motive to retaliate against the appellant based on a protected disclosure of which he was unaware. *See Sherman*, 122 M.S.P.R. 644, ¶ 9 (explaining that a disclosure could only have been a contributing factor in a performance evaluation only if the official learned of it before making his decision).

> *The appellant failed to present evidence establishing that his whistleblowing activity was a contributing factor in the denial of a third day of telework.*

We also find that the appellant did not establish that his protected disclosures were a contributing factor in the decision to deny him a third day of telework. Looking at the strength of the agency's explanation, we find that the agency provided a reasonable and sound basis for the denial. Both MR and CK testified that they denied the appellant's request for a third day of telework because they were trying to foster team interaction and encourage cross-training.

(testimony of MR, testimony of CK). Furthermore, MR and CK confirmed that they, generally, did not approve more than two days of telework – instead, as explained by MR, if a third day of telework was needed, he preferred to approve that on a situational basis. HR (testimony of MR, testimony of CK). Based on the agency's credible explanation, coupled with the fact that the appellant has not introduced any evidence to undermine this explanation, we discern no support for a finding of contributing factor.

Furthermore, we find the record devoid of any evidence that MR or CK was the target of the appellant's whistleblowing activity or that they displayed any motive or desire to retaliate against the appellant for the same. MR and CK were not involved, directly or indirectly, in any of the appellant's protected disclosures, which focused on NM's actions.[13] W-1 IAF, Tab 1 at 16-17; HR (testimony of appellant). Furthermore, MR only learned of the appellant's protected disclosures after he denied the appellant's request for a third day of telework. W-1 IAF, Tab 12 at 46, Tab 13 at 13-14. Thus, we do not find it more likely than not that MR or CK had a motive to retaliate against the appellant for his protected disclosures because they lacked knowledge of those disclosures.

Accordingly, we find that the appellant failed to provide evidence that his protected disclosures were a contributing factor in the decision to deny him a third day of telework.

The agency established by clear and convincing evidence that it would have detailed the appellant absent his protected disclosures

We next turn to the question of whether the agency proved by clear and convincing evidence that it would have detailed the appellant absent his protected activity. 5 U.S.C. § 1221(e)(1). In determining whether an agency has met its burden, the Board will consider all relevant factors, including the following: (1) the strength of agency's evidence in support of its action; (2) the existence

---

[13] While the appellant alleged initially that his disclosure that he feared retaliation from CK and MR was protected, as found previously in this decision, such a disclosure is not protected. W-1 IAF, Tab 1 at 17.

and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who do not engage in such protected activity, but who are otherwise similarly situated. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015); *see Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board must consider all pertinent evidence in the record and must not exclude or ignore countervailing evidence by looking only at evidence that supports the agency's position. *Alarid*, 122 M.S.P.R. 600, ¶ 14; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1367-70 (Fed. Cir. 2012).

Looking at the first two *Carr* factors, we find that the agency has presented a strong basis for its decision to detail the appellant, and there is absolutely no evidence of a motive to retaliate against the appellant. TL stated that he detailed the appellant in order to protect him, as NM, his first-line supervisor, was under investigation due to serious allegations made by the appellant. HR (testimony of TL). In detailing the appellant, TL intentionally removed him from NM's chain of command, which limited the amount of influence NM would have over decisions concerning the appellant at work. *Id.* Additionally, the appellant testified that there was no change in his duties while he was detailed, and he still sat in the same area he had prior to the detail; thus, this detail did not substantially change the appellant's daily work life absent adding an extra layer of protection for him against NM's influence. HR (testimony of appellant). Therefore, we find the basis for the detail to be extremely sound and further find that it demonstrates that TL's motivation was not to retaliate against the appellant but to protect the appellant from retaliation. Notably, in his testimony, the appellant admitted that he had "no problem" with the detail but felt that the detail did not go far enough to remove him from NM's influence. HR (testimony of appellant). Thus, while the appellant may argue that the agency should have done

more to protect him, the appellant does not argue that the detail itself was motivated by retaliation.[14] *Id.*

Regarding the third *Carr* factor, the agency does not address whether it has detailed other employees who did not make a protected disclosure under 5 U.S.C. § 2302(b)(8) when their supervisor was under investigation. While the agency does have an affirmative burden to produce evidence concerning each and every *Carr* factor, our reviewing court has held that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis" but that the failure to produce such evidence it if exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Whitmore*, 680 F.3d at 1374. Moreover, because it is the agency's burden of proof, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). Accordingly, we find that because the agency failed to introduce comparator evidence, the third *Carr* factor cannot weigh in the agency's favor. Nevertheless, we find that evidence presented by the agency for the first and second *Carr* factors is more than sufficient to establish the agency's clear and convincing burden.

Because the agency proved by clear and convincing evidence it would have taken its action absent whistleblowing, we agree with the administrative judge's conclusion that the appellant is not entitled to corrective action. ID at 13.

---

[14] To the extent that the appellant alleges that the agency's failure to further remove the appellant from NM was a personnel action, there is no evidence that this allegation was raised before OSC, and thus, the Board may not consider it here for the first time. *Boechler*, 109 M.S.P.R. 638, ¶ 6 (affirming that the Board may only consider charges of whistleblowing that the appellant raised before OSC); W-1 IAF, Tab 1 at 7, 9-22.

## NOTICE OF APPEAL RIGHTS[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.